UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF GROSSE POINTE,

Plaintiff,

v.

Case No. 18-cv-13428

U.S. SPECIALTY INSURANCE CO.,

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [#19] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#20]

### I. INTRODUCTION

On November 1, 2018, the City of Grosse Pointe ("City") filed the instant breach of contract and declaratory judgment claims against Defendant U.S. Specialty Insurance Company ("Defendant"). ECF No. 1.

Presently before the Court are the City's Partial Motion for Summary Judgment, which was filed on September 25, 2019, and Defendant's Motion for Summary Judgment, which was filed on October 4, 2019. ECF Nos. 19, 20. The parties timely filed their Responses to the respective motions. ECF Nos. 22, 25. The parties also timely filed their Reply briefs. ECF Nos. 26, 27. Additionally, the

parties filed Joint Statements of Facts for their respective motions.[1]  ECF Nos. 29, 30.  A hearing on this matter was held on June 19, 2020.  For the reasons that follow, the Court will **GRANT** the City's Motion for Partial Summary Judgment [#19].  Additionally, the Court will **DENY** Defendant's Motion for Summary Judgment [#20].

## II. FACTUAL BACKGROUND

In its Complaint, the City alleges that Defendant breached its insurance contract when Defendant refused to tender a defense to the claims raised in *Lisa Monticciolo v. City of Grosse Pointe, et al.*, 18-cv-11797 ("Underlying Action").  ECF No. 1, PageID.12.  Plaintiff also brings a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 for the purpose of deciding an actual case and controversy between the parties regarding insurance coverage issued to the City.  *Id.*; *see also* ECF No. 30, PageID.1516.

### A. The Insurance Policies

Defendant issued Special Coverage Policy No. PKG80110771 to the City, effective for the period from October 1, 2016 to October 1, 2017 ("Original Policy").  ECF No. 30, PageID.1517; *see also* ECF No. 1-2.  The City subsequently purchased a Renewal Insurance Policy No. PKG80210771 from Defendant with allegedly

---

[1] The parties filed these Joint Statements pursuant to the Honorable Avern Cohn's Practice Guidelines.  This matter was reassigned to this Court on January 13, 2020.  *See* ECF No. 31.

identical Employment Practices Liability ("EPL") Coverage, effective for the period from October 1, 2017 through October 1, 2020 ("Renewal Policy").  ECF No. 30, PageID.1517; *see also* ECF No. 1-3.

The Original Policy and the Renewal Policy (together, the "Policies") included identical EPL Coverage.  ECF No. 30, PageID.1517.  The EPL Coverage states that Defendant:

> will pay those sums that the insured becomes legally obligated to pay as "damages" because of an "employment practices wrongful act" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those "damages", even if the allegations of such "suit" are groundless, false, or fraudulent.  However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply.  We may, at our discretion, investigate any "employment practices wrongful act" and settle any claim or "suit" that may result.

ECF No. 20, PageID.611.  The Policies define "employment practices wrongful act" to include the following acts, among others: (1) discrimination; (2) harassment; (3) retaliation; (4) wrongful dismissal, discharge, or termination; (5) wrongful hiring, demotion, discipline, evaluation, supervision, or investigation of an "employee" or intentional interference with an employment contract; and (6) wrongful deprivation of a career opportunity, the wrongful failure to promote an "employee" or the wrongful failure to employ.  *Id.* at PageID.612.  Further, the Policies state that "[a]ll claims or 'suits' for 'damages' that arise as a result of a series of related 'employment

practices wrongful acts' committed by an insured will be deemed to have taken place at the time of the first such 'employment practices wrongful act.'"  *Id.*

> The EPL Coverage also contains an exclusion:

> This insurance does not apply to "damages," claims or "suits" alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving . . . [a]ny claim deriving in whole or in part, from any fact, series of facts or circumstances, or matters asserted or alleged in any prior or pending legal action or litigation, administrative or regulatory proceeding, claim, "suit," demand, arbitration, decree or judgment against any insured prior to the beginning of the Policy Period listed in the Declarations.

*Id.* at PageID.612–13.

## B. The Underlying Action

On June 6, 2018, Lisa Monticciolo, Public Safety Officer for the City, filed a lawsuit against the City, the City's Department of Public Safety ("Department"), and Steven Poloni.  *See* ECF No. 1-4.  Ms. Monticciolo alleges that she has been retaliated and discriminated against on the basis of her sex in violation of Title VII and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA").  *See generally id.* Specifically, she purports that despite having the best qualifications and most seniority in the Department, she was passed over for a promotion to an open detective bureau position.  *Id.*  The City filled this position with a male sergeant on January 1, 2018 instead of Ms. Monticciolo.  *Id.* at PageID.388.  Further, Ms. Monticciolo alleges that in June 2017, she was denied medically accommodating

training and was instead forced to use her sick leave despite another male officer having been accommodated by the City. *Id.* at PageID.389.

On or about March 1, 2018, Ms. Monticciolo filed an EEOC Charge against the Department. ECF No. 29, PageID.1508. In the 2018 EEOC Charge, she alleges that on or about May 2, 2011, she filed an EEOC Charge in 2011, which "subsequently became a lawsuit in or about November 2011." *Id.* Further, she asserts that since 2011, she has "been subjected to a series of retaliatory actions, including being denied promotion and subjected to different terms and conditions of employment." *Id.* In sum, Ms. Monticciolo alleges that she has been "denied promotion and subjected to different terms and conditions of employment" due to her sex and "in retaliation for having participated in a protected activity in violation of Title VII … as amended." *Id.* On May 8, 2018, Ms. Monticciolo received her Right to Sue Letter from the EEOC. *Id.* at PageID.1509.

Defendants in the Underlying Action filed a Motion for Summary Judgment on April 15, 2019. Their Motion was denied on October 17, 2019. The Underlying Action is currently set for trial in this Court for August 3, 2020.

## C. The First Lawsuit

Ms. Monticciolo previously filed a lawsuit on November 15, 2011 ("First Lawsuit") against the City, the Department, and others in the Circuit Court of Wayne County, Michigan, Case No. 11-014119-CZ. ECF No. 20, PageID.613. The First

Lawsuit was removed to federal court and was assigned to the Honorable Avern Cohn, Case No. 11-cv-15253. *Id.* The parties in the instant matter contest whether the complaints in the Underlying Action and the First Lawsuit contain similar allegations. *See* ECF No. 29, PageID.1505.

In her Amended Complaint in the First Lawsuit, Ms. Monticciolo alleged that she was denied a promotion to an open position in the Department's detective bureau based on her sex and in retaliation for having filed the 2011 EEOC Charge. *Id.* Specifically, Ms. Monticciolo asserted causes of action for violations of Title VII and ELCRA on the basis of defendant's failure to promote her to the detective bureau position; violations of Mich. Comp. Laws §§ 15.361, *et seq.* for alleged retaliation for filing the 2011 EEOC Charge; hostile work environment/sexual harassment; and failure to supervise. *Id.* at PageID.614.

The parties reached a settlement agreement on February 13, 2015. *Id.*

### D. The Instant Lawsuit

On June 8, 2018, the City forwarded Ms. Monticciolo's Complaint in the Underlying Action to Defendant. ECF No. 30, PageID.1521. Defendant appointed its counsel Tom McGraw to defend the City "subject to a full reservation of its rights under the Policies[.]" *Id.* On August 17, 2018, Defendant sent a letter informing the City that it was denying insurance coverage for all claims. *Id.* at PageID.1522. In the letter, Defendant indicated that there was no coverage based on the Policies'

"Prior and Pending Exclusion." *Id.* Further, Defendant explained that the "employment practices wrongful acts" alleged in the Underlying Action are related to the "employment practices wrongful acts" alleged in the First Lawsuit; thus, the acts "are deemed to have occurred prior to the inception of the Policies." ECF No. 20, PageID.617. Defendant also asserted that there is no coverage under the Policies' Excess Coverage Part. *Id.*

On September 11, 2018, the City's counsel sent a letter to Defendant, contesting Defendant's denial of coverage. ECF No. 30, PageID.1524. Defendant's counsel responded on October 1, 2018, maintaining Defendant's position that there is no coverage under the Policies. *Id.* at PageID.1524–25. The City's other insurer, Michigan Municipal League ("MML") agreed to fund one third of the defense costs incurred by the City and the insureds in the Underlying Action. *Id.* at PageID.1525. Plaintiff continues to self-fund the remaining two thirds of defense costs. *Id.*

On November 1, 2018, the City filed the instant lawsuit against Defendant, alleging that Defendant breached the Policies. ECF No. 1, PageID.10. Plaintiff also seeks a declaration that Defendant is obligated to provide a defense and indemnity under the Policies for the Underlying Action. *Id.* at PageID.12–13.

The City's instant Motion for Partial Summary Judgment asks the Court to enter an Order holding that (1) Defendant's duty to defend the City was triggered by the complaint in the Underlying Action; (2) Defendant breached the insurance

contract by declining coverage; (3) the City is entitled to recovering all past defense costs which it paid out of pocket; and (4) the City is entitled to all past damages, including litigation costs and attorney's fees which it incurred, plus all outstanding 12% penalty interest due under MCL 500.2006.   ECF No. 19, PageID.463. Defendant's instant Motion for Summary Judgment asks the Court to dismiss the City's claims against it with prejudice, arguing that it does not have a duty to defend or indemnify the City in the Underlying Action.  ECF No. 20, PageID.610–11.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"

*Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

In their respective motions for summary judgment, the City and Defendant dispute whether Defendant has a duty to defend the City in the Underlying Action as a matter of law.

### A. An Insurer's Duty to Defend

An insurer's duty to defend in an insurance policy is distinct and broader than its duty to indemnify. *Grand Trunk W. R.R., Inc. v. Auto Warehousing Co.,* 686 N.W.2d 756, 762 (Mich. Ct. App. 2004); *see also Frankenmuth Mut. Ins. Co. v. Piccard,* 489 N.W.2d 422 (Mich. 1992). The duty to defend is governed by the terms of the insurance policy. *Frankenmuth Mut. Ins. Co. v. Cont'l Ins. Co.,* 537 N.W.2d 879 (Mich. 1995). Under Michigan law, the existence of an insurer's duty to defend

> depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even *arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy.

*Protective Nat. Ins. Co. of Omaha v. City of Woodhaven*, 476 N.W.2d 374, 375–76 (Mich. 1991) (citations omitted).

In Michigan, courts must liberally construe the underlying complaint. *St. Paul Fire and Marine Ins. Co. v. Parzen*, 569 F. Supp. 753, 755 (E.D. Mich. 1983). "[T]he insurer is under an obligation to defend, if the underlying complaint alleges

facts constituting a cause of action within policy coverage, even if other facts constituting causes of action not covered by the policy are also alleged." *Id.* (citations omitted). Courts within this District have asserted that "any doubts or ambiguities in the insurance contract are to be construed most favorably to the insured. This principle is especially true where contract exclusions and exceptions are involved." *See, e.g.*, *id.*

Michigan courts interpret insurance contracts "in accordance with Michigan's well-established principles of contract construction." *Henderson v. State Farm Fire and Cas. Co.,* 596 N.W.2d 190 (Mich. 1999) (citation omitted). This requires insurance contracts to be enforced according to their terms, and courts should not create an ambiguity when the policy is clear and precise. *Id.* (citations omitted).

## B. Allegations in the Underlying Complaint Occurred During Defendant's Policy Periods

Counts I and II of the Underlying Action "sound in gender discrimination." ECF No. 19, PageID.469. Ms. Monticciolo alleges in the 'fact section' of her complaint that the City placed Sergeant Joseph Adams in the open detective bureau position despite the fact that she is "more qualified" based on "education, qualifications, and seniority, and especially given that [Mr.] Poloni was aware that Sergeant Adams made several illegal arrests within the preceding year." ECF No. 1-4, PageID.388–89. Additionally, Ms. Monticciolo alleges that in June 2017 she was denied medically accommodating training and was instead forced to use her sick

leave despite another male officer having been accommodated with his own request. *Id.* at PageID.389. According to the City in the instant action, neither Count I nor Count II include "any allegation regarding retaliation or refers in any way to alleged retaliation regarding a prior lawsuit Ms. Monticciolo had filed against [it]." ECF No. 19, PageID.470.

The City argues that these counts "mirror the coverage language" of the Policies in which Defendant promised to defend the City against allegations that it failed to promote an individual on the basis of sex. *Id.* In the "Coverage" section of the Policies, Section I, Defendant agreed to:

> [P]ay those sums that the insured becomes legally obligated to pay as "damages" because of an "employment practices wrongful act" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages", even if the allegations of such "suit" are groundless, false or fraudulent.

ECF No. 19-3, PageID.516. Further, the Policies state that "[t]his insurance applies to 'damages' only if the 'employment practices wrongful act' occurs in the 'coverage territory', during the Policy Period listed in the Declarations." *Id.*

In the "Definitions" section of the Policies, Section VI, "employment practices wrongful act" includes, among other things, "discrimination"; "wrongful hiring, demotion discipline or termination (either actual or constructive) of employment, including breach of an implied employment contract or an implied covenant of good faith and fair dealing in an employment contract"; and "wrongful

deprivation of a career opportunity, the wrongful failure to promote an 'employee' or the wrongful failure to employ." *Id.* at PageID.538–39. In its Motion, the City asserts that this definition "specifically contemplates coverage for gender discriminations such as those raised by Ms. Monticciolo." ECF No. 19, PageID.468.

Defendant argues that the City cannot meet its "threshold burden" to demonstrate that the Underlying Action implicates the Policies' EPL Coverage. ECF No. 20, PageID.620. It asserts that the "employment practices wrongful acts" alleged in the Underlying Action are "related" to those alleged in the First Lawsuit, which occurred prior to the inception of the Policies. *Id.* Defendant cites to the "Limits of Insurance" section of the Policies, which states that "[a]ll claims or 'suits' for 'damages' that arise as a result of a series of related 'employment practices wrongful acts' committed by an insured will be deemed to have taken place at the time of the first such 'employment practices wrongful act.'" ECF No. 19-3, PageID.521.

A fair reading of Ms. Monticciolo's complaint in the Underlying Action shows that the City is potentially liable for damages from an "employment practices wrongful act" for the period between June 2017 and January 1, 2018. During this period, Ms. Monticciolo alleges two instances of discrimination on the basis of her sex. First, in June 2017, the City purports that Mr. Poloni denied her request to attend medically accommodating training—a training which "would have even

further improved her candidacy for the detective bureau position"—and instead required her to use up time in her sick bank.  ECF No. 1-4, PageID.390.  By contrast, the City allegedly permitted one of its male employees, Lieutenant Alcorn, to attend medically accommodating training when he was injured.  *Id.*  Second, Mr. Poloni placed Sergeant Joseph Adams in the open detective bureau position which Ms. Monticciolo claims she is "more qualified" for based on her "education, qualifications, and seniority," effective January 1, 2018.  *Id.* at PageID.389.  She alleges that she expressed her "clear interest" in the position in 2017 when the Policies were in effect.  *Id.*

The Court emphasizes that under Michigan law, the insurer has a duty to defend "so long as the allegations against the insured even *arguably* come within the policy coverage."  *Protective Nat. Ins. Co. of Omaha v. City of Woodhaven*, 476 N.W.2d 374, 375–76 (Mich. 1991) (citations omitted).  In Counts I and II, Ms. Monticciolo asserts that the City's treatment of her "was based, in least in part, on lawful consideration of her sex/gender."  *Id.* at PageID.390, 391.  Further, Ms. Monticciolo purports that "[s]imilarly situated men were treated better than [her] with respect to the terms and conditions of her employment."  *Id.*  Ms. Monticciolo's claims surrounding the City's decisions to hire Sergeant Adams and to deny her request for medically accommodating training occurred during the Policies' coverage periods.  Ms. Monticciolo's claims surrounding the City's alleged gender

discrimination (Counts I and II), as well as a reasonable reading of the Policies and its definition of "employment practices wrongful act," thus demonstrates that Defendant owes a duty of defense.

### C. The Prior and Pending Exclusion Does Not Preclude Coverage

Defendant argues that the Underlying Action is excluded by the Policies' "Prior and Pending Exclusion." ECF No. 20, PageID.622. This provision states that there is no coverage for

> [a]ny claim deriving in whole or in part, from any fact, series of facts or circumstances, or matters asserted or alleged in any prior or pending legal action or litigation, administrative or regulatory proceeding, claim, "suit," demand, arbitration, decree or judgment against any insured prior to the beginning of the Policy Period listed in the Declarations.

ECF No. 19-3, PageID.533. Defendant asserts that the Underlying Action "is based upon, arises out of, is attributable to, directly or indirectly results from, is in consequence of, in any way involves, or derives in whole or in part from the facts, series of facts or circumstances, or matters asserted or alleged in the First Lawsuit[.]" ECF No. 20, PageID.622–23.

The City concedes that this exclusion may implicate the extent of Defendant's indemnity obligation as to Ms. Monticciolo's retaliation claims. ECF No. 25, PageID.1455–56. It argues, however, that "[t]here is nothing" in the "Prior and Pending Exclusion" that implicates Ms. Monticciolo's sex discrimination claims. *Id.* at PageID.1459. The City emphasizes that these claims, Counts I and II, refer to

allegations that Ms. Monticciolo was discriminated against because of her sex in July 2017 and January 2018. *Id.* at PageID.1460.

In support of its argument, Defendant cites to several courts outside of the Sixth Circuit. *See* ECF No. 20, PageID.623–24; *see also* ECF No. 35. At the hearing, Defendant emphasized its Notice of Supplemental Authority, which included a decision from the North District of Illinois. ECF No. 35. In *U.S. Specialty Ins. Co. v. Vill. of Melrose Park*, the district court determined that the insurer, U.S. Specialty Insurance Company, did not have a duty to defend or indemnify the insured, Village of Melrose Park ("Village"), in an underlying lawsuit based on a similar "prior and pending" exclusion. 2020 U.S. Dist. LEXIS 69665 (N.D. Ill. Apr. 21, 2020). The plaintiff in the underlying lawsuit filed a discrimination charge with the EEOC against the Village on September 15, 2017, alleging that the Village retaliated against him for opposing unlawful or discriminatory practices. *Id.* at *7. The plaintiff then filed the underlying lawsuit in the district court on June 7, 2018.

The district court addressed the parties' disagreement as to whether the EEOC investigation into the underling plaintiff's charges amounted to an "administrative or regulatory proceeding" as defined in the insurance policy. *Id.* at *20. It concluded that the insurance policy's use of different terms did not create an ambiguity or exclude a regulatory investigation or action from the scope of the "prior and pending" exclusion. *Id.* at *23. The district court concluded that "[b]ecause the

underlying lawsuit derives in part from the facts or circumstances in [the plaintiff's] EEOC charges, Clause 3b of Exclusion L ["prior and pending" exclusion] also bars coverage." *Id.* at *24.

This Court emphasizes that the retaliation allegations raised by the plaintiff against the Village in *Vill. of Melrose Park* were "based on the same protective activity raised in his EEOC charge." *Id.* at *8.  Here, as explained in the preceding section, Ms. Monticciolo avers retaliation charges as well as two counts of gender discrimination.  The underlying facts for the two counts of gender discrimination are not "based on the same activity" raised in the First Lawsuit.  Rather, Ms. Monticciolo's discrimination claims in the Underlying Action arise from the City's alleged behavior to deny her medically accommodating training in June 2017 and to hire Sergeant Adams, instead of her, for a detective bureau position in January 2018. These two purported instances occurred several years after Ms. Monticciolo's First Lawsuit and squarely within the Policies' periods.

Defendant also cites to one decision from the Eastern District of Michigan. ECF No. 20, PageID.623.  In *Realcomp II. Ltd. v. Ace Am. Ins. Co.*, the district court granted summary judgment in favor of the insurer after determining that a "prior or pending" exclusion applied to the underlying action.  46 F. Supp. 3d 736 (E.D. Mich. 2014).  The district court explained that the plaintiffs in both the underlying action and in an earlier action from three years prior alleged "the same wrongful anti-

competitive behavior and action by Realcomp[.]" *Id.* at 742. It thus concluded that Realcomp's alleged anti-competitive behavior was the same "circumstance" or "situation" with respect to both lawsuits. *Id.* The district court opined that the plaintiffs in the two lawsuits were "merely making alternative claims for their own damages based on the same set of facts." *Id.*

In the instant, Underlying Action, Ms. Monticciolo alleges that the City discriminated against her on the basis of her sex in two instances: June 2017 and January 2018. In the First Lawsuit, Ms. Monticciolo alleged, among other things, that the City discriminated against her on the basis of her sex on a different set of facts. There, Ms. Monticciolo alleged several instances of the City's disparate treatment between 2010 and 2011. For example, Ms. Monticciolo alleged that she was denied a promotion to an open position in the Department's detective bureau based on her sex and in retaliation for having filed the 2011 EEOC Charge. Additionally, she purported several instances of a hostile work environment/sexual harassment, including an allegation that she was prohibited from going on a fire call after being told by her supervisor, "you're a girl. All you're good for is working in the kitchen." None of these allegations are raised in the Underlying Action.

Under Michigan law, courts must narrowly construe exclusions to insurance coverage against the insurer. *Group Ins. Co. of Mich. v. Czopek*, 489 N.W.2d 444, 447 (Mich. 1992). If there are any doubts as to coverage, such doubts must be

resolved in favor of coverage. *Illinois Employers Ins. of Wausau v. Dragovich*, 362 N.W.2d 767, 769 (Mic. Ct. App. 1984). Even if the "Prior and Pending Exclusion" implicated the extent of Defendant's indemnity obligation as to Ms. Monticciolo's retaliation claims (Counts III and IV), this would not absolve Defendant of its duty to defend the City. "An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981) (citation omitted). As explained in the preceding section, the sex discrimination claims in the Underlying Action fall within the "employment practice wrongful acts" during the Policies' periods. There is thus potential for covered claims to be found credible by the jury during the Policies' coverage period. Defendant has an obligation to defend the City until such a time that all potential avenues for coverage are extinguished. *See Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F. Supp. 2d 847, 852 (E.D. Mich. 1997) ("Once triggered, the duty to defend continues until that stage in the proceedings is reached where there is no longer any uncertainty as to the possibility of coverage.") (citation omitted).

Accordingly, the Court finds that the "Prior and Pending Exclusion" does not preclude coverage for the Underlying Action. Defendant's Motion for Summary

Judgment will thus be denied and the City's Motion for Partial Summary Judgment will be granted.

### D. The City's Incurred Damages

Given that the Court has determined that Defendant had and continues to have a duty to defend the City in the Underlying Action, the Court must next determine the amount of damages incurred by the City. In its Motion, the City asserts that it has "incurred substantial out-of-pocket costs that should have been covered by [Defendant.]" ECF No. 19, PageID.481. The City has not yet offered calculations for the damages, fees and interest for its incurred costs. Rather, the City requests an evidentiary hearing for the Court to determine all past due damages. *Id.* at PageID.482.

The Court hereby orders the City to file a brief in support of its alleged past due damages, not to exceed seven pages, supported by appropriate evidence such as affidavits and invoices by Tuesday, July 28, 2020. It is further ordered that Defendant file a Response, not to exceed seven pages, by Friday, August 7, 2020. The Court will hold a hearing on the parties' briefs on Thursday, September 24, 2020.

### IV. CONCLUSION AND ORDER

For the reasons articulated above, the Court **GRANTS** the City's Motion for Partial Summary Judgment [#19]. The Court **DECLARES** that Defendant had and

continues to have a duty to defend the City in the underlying *Monticciolo v. City of Grosse Pointe, et al.* action, 18-cv-11797.  This duty to defend was triggered by the Complaint in the Underlying Action.  The Court thus finds that Defendant breached the insurance contract by declining coverage to the City, and a partial judgment will be entered consistent with this Opinion and Order.

IT IS FURTHER ORDERED that the Court **DENIES** Defendant's Motion for Summary Judgment [#20].

IT IS FURTHER ORDERED that the City file a brief in support of its alleged past due damages, not to exceed seven pages, supported by appropriate evidence such as affidavits and invoices by **Tuesday, July 28, 2020**.

IT IS FURTHER ORDERED that Defendant file a Response brief, not to exceed seven pages, by **Friday, August 7, 2020**.

IT IS FURTHER ORDERED that, upon receipt of the parties' supplemental briefs and the Court's determination of the amount of damages incurred by the City, the Court shall amend the partial judgment.

IT IS SO ORDERED.

Dated:      July 13, 2020

/s/Gershwin A. Drain
HON. GERSWHIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 13, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager