UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF GROSSE POINTE,

    Plaintiff,

    v.

U.S. SPECIALTY INSURANCE CO.,

    Defendant.

_____/

Case No. 18-cv-13428

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING PLAINTIFF'S REQUEST FOR DAMAGES [#46]

### I. INTRODUCTION

On November 1, 2018, the City of Grosse Pointe ("City") filed the instant breach of contract and declaratory judgment claims against Defendant U.S. Specialty Insurance Company ("Defendant"). ECF No. 1.

Presently before the Court is the City's Supplemental Damages Brief (hereinafter, "Supplemental Brief"), which was filed on July 24, 2020. The Court previously ordered supplemental briefing on the City's alleged past due damages in its July 13, 2020 Order Granting the City's Motion for Partial Summary Judgment and Denying Defendant's Motion for Summary Judgment. ECF No. 44, PageID.1693. A hearing on this matter was held on September 24, 2020. For the reasons that follow, the Court will **GRANT** the City's request for past damages.

1

## II. FACTUAL BACKGROUND

In its Complaint, the City alleges that Defendant breached its insurance contract when Defendant refused to tender a defense to the claims raised in *Lisa Monticciolo v. City of Grosse Pointe, et al.*, 18-cv-11797 ("Underlying Action"). ECF No. 1, PageID.12. Plaintiff also brings a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 for the purpose of deciding an actual case and controversy between the parties regarding insurance coverage issued to the City. *Id.*; *see also* ECF No. 30, PageID.1516.

### A. The Insurance Policies

Defendant issued Special Coverage Policy No. PKG80110771 to the City, effective for the period from October 1, 2016 to October 1, 2017 ("Original Policy"). ECF No. 30, PageID.1517; *see also* ECF No. 1-2. The City subsequently purchased a Renewal Insurance Policy No. PKG80210771 from Defendant with allegedly identical Employment Practices Liability ("EPL") Coverage, effective for the period from October 1, 2017 through October 1, 2020 ("Renewal Policy"). ECF No. 30, PageID.1517; *see also* ECF No. 1-3.

The Original Policy and the Renewal Policy (together, the "Policies") included identical EPL Coverage. ECF No. 30, PageID.1517. The EPL Coverage states that Defendant:

> will pay those sums that the insured becomes legally obligated to pay as "damages" because of an "employment practices wrongful act" to

> which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages", even if the allegations of such "suit" are groundless, false, or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any "employment practices wrongful act" and settle any claim or "suit" that may result.

ECF No. 20, PageID.611. The Policies define "employment practices wrongful act" to include the following acts, among others: (1) discrimination; (2) harassment; (3) retaliation; (4) wrongful dismissal, discharge, or termination; (5) wrongful hiring, demotion, discipline, evaluation, supervision, or investigation of an "employee" or intentional interference with an employment contract; and (6) wrongful deprivation of a career opportunity, the wrongful failure to promote an "employee" or the wrongful failure to employ. *Id.* at PageID.612. Further, the Policies state that "[a]ll claims or 'suits' for 'damages' that arise as a result of a series of related 'employment practices wrongful acts' committed by an insured will be deemed to have taken place at the time of the first such 'employment practices wrongful act.'" *Id.*

The EPL Coverage also contains an exclusion:

> This insurance does not apply to "damages," claims or "suits" alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving . . . [a]ny claim deriving in whole or in part, from any fact, series of facts or circumstances, or matters asserted or alleged in any prior or pending legal action or litigation, administrative or regulatory proceeding, claim, "suit," demand, arbitration, decree or judgment against any insured prior to the beginning of the Policy Period listed in the Declarations.

3

*Id.* at PageID.612–13.

### B. The Underlying Action

On June 6, 2018, Lisa Monticciolo, Public Safety Officer for the City, filed a lawsuit against the City, the City's Department of Public Safety ("Department"), and Steven Poloni. *See* ECF No. 1-4. Ms. Monticciolo alleges that she has been retaliated and discriminated against on the basis of her sex in violation of Title VII and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). *See generally id.* Specifically, she purports that despite having the best qualifications and most seniority in the Department, she was passed over for a promotion to an open detective bureau position. *Id.* The City filled this position with a male sergeant on January 1, 2018 instead of Ms. Monticciolo. *Id.* at PageID.388. Further, Ms. Monticciolo alleges that in June 2017, she was denied medically accommodating training and was instead forced to use her sick leave despite another male officer having been accommodated by the City. *Id.* at PageID.389.

On or about March 1, 2018, Ms. Monticciolo filed an EEOC Charge against the Department. ECF No. 29, PageID.1508. In the 2018 EEOC Charge, she alleges that on or about May 2, 2011, she filed an EEOC Charge in 2011, which "subsequently became a lawsuit in or about November 2011." *Id.* Further, she asserts that since 2011, she has "been subjected to a series of retaliatory actions, including being denied promotion and subjected to different terms and conditions of

4

employment." *Id.* In sum, Ms. Monticciolo alleges that she has been "denied promotion and subjected to different terms and conditions of employment" due to her sex and "in retaliation for having participated in a protected activity in violation of Title VII … as amended." *Id.* On May 8, 2018, Ms. Monticciolo received her Right to Sue Letter from the EEOC. *Id.* at PageID.1509.

Defendants in the Underlying Action filed a Motion for Summary Judgment on April 15, 2019. Their Motion was denied on October 17, 2019. The Underlying Action is currently set for trial in this Court for November 3, 2020.

### C. The First Lawsuit

Ms. Monticciolo previously filed a lawsuit on November 15, 2011 ("First Lawsuit") against the City, the Department, and others in the Circuit Court of Wayne County, Michigan, Case No. 11-014119-CZ. ECF No. 20, PageID.613. The First Lawsuit was removed to federal court and was assigned to the Honorable Avern Cohn, Case No. 11-cv-15253. *Id.* The parties in the instant matter contest whether the complaints in the Underlying Action and the First Lawsuit contain similar allegations. *See* ECF No. 29, PageID.1505.

In her Amended Complaint in the First Lawsuit, Ms. Monticciolo alleged that she was denied a promotion to an open position in the Department's detective bureau based on her sex and in retaliation for having filed the 2011 EEOC Charge. *Id.* Specifically, Ms. Monticciolo asserted causes of action for violations of Title VII

5

and ELCRA on the basis of defendant's failure to promote her to the detective bureau position; violations of Mich. Comp. Laws §§ 15.361, *et seq.* for alleged retaliation for filing the 2011 EEOC Charge; hostile work environment/sexual harassment; and failure to supervise. *Id.* at PageID.614.

The parties reached a settlement agreement on February 13, 2015. *Id.*

### D. The Instant Lawsuit

On June 8, 2018, the City forwarded Ms. Monticciolo's Complaint in the Underlying Action to Defendant. ECF No. 30, PageID.1521. Defendant appointed its counsel Tom McGraw to defend the City "subject to a full reservation of its rights under the Policies[.]" *Id.* On August 17, 2018, Defendant sent a letter informing the City that it was denying insurance coverage for all claims. *Id.* at PageID.1522. In the letter, Defendant indicated that there was no coverage based on the Policies' "Prior and Pending Exclusion." *Id.* Further, Defendant explained that the "employment practices wrongful acts" alleged in the Underlying Action are related to the "employment practices wrongful acts" alleged in the First Lawsuit; thus, the acts "are deemed to have occurred prior to the inception of the Policies." ECF No. 20, PageID.617. Defendant also asserted that there is no coverage under the Policies' Excess Coverage Part. *Id.*

On September 11, 2018, the City's counsel sent a letter to Defendant, contesting Defendant's denial of coverage. ECF No. 30, PageID.1524. Defendant's

6

counsel responded on October 1, 2018, maintaining Defendant's position that there is no coverage under the Policies. *Id.* at PageID.1524–25. The City's other insurer, Michigan Municipal League ("MML") agreed to fund one third of the defense costs incurred by the City and the insureds in the Underlying Action. *Id.* at PageID.1525. Plaintiff continues to self-fund the remaining two thirds of defense costs. *Id.*

On November 1, 2018, the City filed the instant lawsuit against Defendant, alleging that Defendant breached the Policies. ECF No. 1, PageID.10. Plaintiff also seeks a declaration that Defendant is obligated to provide a defense and indemnity under the Policies for the Underlying Action. *Id.* at PageID.12–13.

On July 13, 2020 the Court issued an Order granting the City's Motion for Partial Summary Judgment and denying Defendant's Motion for Summary Judgment. ECF No. 44. In this Order, the Court determined that Defendant had and continues to have a duty to defend the City in the Underlying Action. *Id.* at PageID.1693; *see also* ECF No. 45. Moreover, the Court found that Defendant breached its insurance contract by declining coverage to the City. ECF No. 45. At the time of writing its Motion for Partial Summary Judgment (ECF No. 19), the City did not offer calculations for the damages, fees, and interest for its incurred costs in the Underlying Action. *See* ECF No. 44, PageID.1693. The City instead requested an evidentiary hearing for the Court to determine all past due damages. *See id.* The Court therefore ordered the City to file a brief in support of its alleged past due

7

damages, supported by appropriate evidence by July 28, 2020. *Id.* The City timely filed its instant Supplemental Brief on July 24, 2020. ECF No. 46. The Court also ordered Defendant to file a Response; however, at the time of this writing, Defendant did not submit a Response brief. ECF No. 44, PageID.1693.

### III. LAW & ANALYSIS

This is a diversity suit premised on the application of Michigan law. In a contract diversity action, conflict of law rules "require the application of the law of the place where the insurance policies were issued and countersigned." *Ins. Co. of N. America v. Forty–Eight Insulations, Inc.,* 451 F. Supp. 1230, 1237 (E.D. Mich. 1978). As explained in the Court's July 13, 2020 Order, Michigan law requires courts to liberally construe an underlying complaint. ECF No. 44, PageID.1683 (citing *St. Paul Fire and Marine Ins. Co. v. Parzen*, 569 F. Supp. 753, 755 (E.D. Mich. 1983)). "[T]he insurer is under an obligation to defend, if the underlying complaint alleges facts constituting a cause of action within policy coverage, even if other facts constituting causes of action not covered by the policy are also alleged." *Id.*

In its present Supplemental Brief, the City requests a partial judgment in the following amounts: (1) $64.676.62 in past damages; (2) $15,394.81 in penalty interest under MCL 500.2006; and (3) daily interest accruing at the rate of $21.26. ECF No. 46, PageID.1704. Moreover, the City asks the Court to allow it to

8

supplement its damages claim when additional out-of-pocket defense costs are incurred. *Id.*

### A. Past Damages

The City first requests $64,676.62 in past damages. ECF No. 46, PageID.1704. In support of this request, the City submitted legal invoices from the law firm representing it in the Underlying Action, ECF No. 48; copies of the checks it issued to pay such legal invoices, ECF No. 46-3; and an affidavit by the City's treasurer, Ms. Kimberly Kleinow, ECF No. 46-4.

"If an insurer wrongfully declines to defend, the insurer is liable for the costs for the defense[.]" *N. Bank v. Cincinnati Ins. Co.*, 125 F.3d 983, 986 (6th Cir. 1997). This includes reasonable attorney fees. *Cooley v. Mid-Century Ins. Co.*, 218 N.W.2d 103, 105 (Mich. Ct. App. 1974). The City attached its legal invoices from the McGraw Morris law firm to its Supplement Brief as "Exhibit A." ECF No. 46-2. The City subsequently submitted a sealed version of these invoices. ECF No. 48. The submitted invoices cover the McGraw Morris law firm's representation between September 4, 2018 through May 15, 2020. *See id.* The City also submitted copies of seven checks which it submitted to the McGraw Morris law firm on various dates between November 19, 2018 and June 30, 2020. ECF No. 46-3. In her attached affidavit, Ms. Kleinow asserted that these seven checks amount to payments totaling $64,676.62. ECF No. 46-4, PageID.1785. Ms. Kleinow explained that this total

9

does not include any payments made by the City's other insurer, MML, which agreed to fund one third of the defense costs resulting from the Underlying Action. *Id.*; *see also* ECF No. 30, PageID.1525.

At the hearing, the parties agreed that Defendant issued a check on September 16, 2020 for the City's requested award of $64,676.62 in past damages. The City's counsel informed the Court that he had not yet deposited this check out of caution for this action to not be construed a waiver of the City's rights on the outstanding issue of penalty interest or the potential issue of indemnity. In light of Defendant's recent payment, the Court finds that the issue concerning the award of $64,676.62 in past damages for Defendant's breach of the insurance contract is moot.

### B. Penalty Interest Under MCL 500.2006

The City also seeks an award of a twelve percent penalty interest under MCL 500.2006. ECF No. 46, PageID.1704. The City seeks an award of $15,394.81, as well as daily interest accruing at a rate of $21.26 per day. *Id.* The City attached a report and affidavit from its CPA firm, Mellen, Smith and Pivoz, in support of its request under MCL 500.2006. ECF No. 46-5. Defendant did not file a Response in opposition to this request nor did it orally oppose this request at the hearing.

The Uniform Trade Practices Act ("UTPA"), MCL 500.2001 *et seq.* provides that a claimant may seek penalty interest when an insurer fails to pay a claim on a timely basis. Specifically, MCL 500.2006 provides for the imposition of penalty

interest for an insurer's late payment of a claim. *Griswold Prop., LLC v. Lexington Ins. Co.*, 741 N.W.2d 549, 551 (Mich. Ct. App. 2007). "The purpose of the statute is to penalize insurers who fail to timely pay benefits." *Stryker Corp. v. XL Ins. Am.*, 576 Fed. Appx. 496, 504 (6th Cir. 2014) (citation omitted). The Sixth Circuit has determined that an award of penalty interest pursuant to MCL 500.2006 applies to untimely benefits and when benefits are not paid at all. *Id.* Moreover, the Sixth Circuit has held that attorney's fees stemming from an insurer's breach of the duty to defend were also subject to penalty interest. *Stryker Corp. v. XL Ins. America*, 735 F.3d 349, 361 (6th Cir. 2012). Mich. Comp. Laws § 500.2006(4) provides, in relevant part, as follows:

> If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law.

MCL § 500.2006(4).

Courts in this District have determined that an insurer's bad faith is not a prerequisite for the applicability of the penalty interest when the insured is not a third-party tort claimant. *See No Limit Clothing, Inc. v. Allstate Ins. Co.*, No. 09-13574, 2011 WL 96869, at *5 (E.D. Mich. Jan. 12, 2011); *Hawthorne v. Lincoln*

11

*Gen. Ins. Co.*, No. 08-12325, 2009 WL 1035293, at *2 (E.D. Mich. Apr. 16, 2009). The City's entitlement to receive its requested twelve percent interest hinges on whether the claim was submitted to Defendant, as well as "satisfactory proof of its losses." *No Limit Clothing, Inc.*, 2011 WL 96869, at *5. If the City can demonstrate that Defendant failed to make a payment within a sixty-day period of its request, it can obtain its requested penalty interest regardless of Defendant's good or bad faith. *Id.*

Here, the City tendered the Complaint in the Underlying Action on June 8, 2018. *See* ECF No. 30, PageID.1521. Indeed, Defendant appointed its counsel Tom McGraw to defend the City "subject to a full reservation of its rights under the Policies[.]" *Id.* In its present Supplemental Brief, the City explains that its CPA firm accordingly used August 7, 2018 as the date on which the penalty interest under MCL 500.2006(4) began to accrue. ECF No. 46, PageID.1708–09; ECF No. 46, PageID.1789 ("I used August 7, 2018 as the start date for the accrual of interest and July 31, 2020 as the end date for the accrual of interest[.]"). The City's CPA firm determined that the total amount of interest through July 31, 2020 is $15,394.81. ECF No. 46-5, PageID.1789. Moreover, they calculated the daily interest to be $21.26 until the remaining balance is paid off. *Id.* The Court finds that this total amount of interest is appropriate pursuant to MCL 500.2006 and is well-supported

by the attached evidence. Moreover, the Court denotes once more that Defendant does not oppose the City's request for penalty interest.

Accordingly, Defendant is liable for twelve percent penalty interest on any funds, including attorney's fees, it wrongfully withheld from the City. The daily penalty interest shall cease to run on September 16, 2020, that date on which Defendant issued a check for past damages.

### C. Additional Out-Of-Pocket Defense Costs

Finally, the City requests that the Court allow it to supplement its damages claim when additional out-of-pocket defense costs are incurred. ECF No. 46, PageID.1704. In its July 13, 2020 Order, the Court held that Defendant is obligated to defend the City in the Underlying Action moving forward. ECF No. 44, PageID.1693–94. The Court will grant the City's request to supplement its damages claim when additional out-of-pocket defense costs are incurred, as the Court is aware the Underlying Action remains pending at the time of this writing.

### D. Parties' Request to Stay Proceedings

At the hearing, the parties requested the Court stay this action. The City informed the Court that the parties in the Underlying Action are going to facilitation on Tuesday, September 29, 2020 ahead of their November 3, 2020 trial date.

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and

effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1997)). "Where the stay motion is premised on the alleged significance of another case's imminent disposition, courts have considered the potential dispositive effect of the other case, judicial economy achieved by awaiting adjudication of the other case, the public welfare, and the relative hardships to the parties created by withholding judgment." *Caspar v. Snyder*, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015).

The Court agrees with the parties' request and finds that the interests of judicial economy weigh in favor of staying proceedings. Accordingly, the Court will stay this action for approximately sixty days.

### IV. CONCLUSION AND ORDER

For the reasons articulated above, the Court **GRANTS** the City's request for past damages.

**IT IS FURTHER ORDERED** that the Court **GRANTS** the City's request for penalty interest under MCL 500.2006 in the amount of $15,394.81 through July 31, 2020, as well as daily interest accruing at the rate of $21.26. The daily penalty interest shall cease to run on September 16, 2020.

**IT IS FURTHER ORDERED** that the Court **GRANTS** the City's request to

supplement it damages claim when additional out-of-pocket defense costs are incurred.

**IT IS FURTHER ORDERED** that the City's request for past damages in the amount of $64,676.62 is **MOOT**.

**IT IS FURTHER ORDERED** that a status conference will be conducted on **November 30, 2020 at 2:00 p.m.**

**IT IS FURTHER ORDERED** that this action is stayed for approximately sixty days, until the status conference on November 30, 2020.

**IT IS SO ORDERED.**


Dated: September 24, 2020

/s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 24, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager